**REFINED SYRUPS & SUGARS, Inc.,
Plaintiff,**

v.

**The TRAVELERS INSURANCE COMPANY, Defendant.**

United States District Court
S. D. New York.
Dec. 15, 1954.

908

Barry, Treanor & Shandell, New York City, for plaintiff, James A. Treanor, New York City, of counsel.

Galli & Locker, New York City, for defendant, John G. Donovan, New York City, of counsel.

PALMIERI, District Judge.

The question presented is whether a liability insurance policy issued by defendant covered the recovery by one Dioguardi for an injury suffered by him in the plaintiff's premises. The facts are substantially undisputed.

Plaintiff, hereinafter referred to as "Refined", operated a large sugar plant in Yonkers, New York. It employed the Frank Angelilli Construction Corporation (Angelilli) as independent contractor to undertake construction work at its plant. Angelilli held a liability insurance policy purchased from defendant (Travelers); and an amendment to the policy provided that

"It is agreed that the interest of the Refined Syrups and Sugars Incorporated, ft. of Vark St., Yonkers, N. Y. is covered as an additional insured as respects to operations performed by the named insured for the Refined Syrups and Sugars Incorporated on a cost plus basis throughout the term of this policy."

While this policy was in effect, Dioguardi, one of Angelilli's employees, suffered serious personal injuries when he was accidentally struck by the counterweight of an elevator on Refined's premises. At the time of the accident, the elevator was being operated by one of

Refined's employees for reasons unconnected with the construction work that was being performed by Angelilli. Dioguardi brought suit against Refined and recovered a judgment in the sum of $40,-000 after three trials before the New York Supreme Court.

The first of the State Court trials resulted in a verdict set aside for inadequacy. The second resulted in a verdict for the defendant which was set aside by the Trial Court for its own error in excluding evidence. This evidence was to the effect that shortly before the accident, the plant manager of Refined had refused the request of the independent contractor, Angelilli, to shut down the elevator pending completion of the work task by the employee who was subsequently injured. The evidence adduced at the third trial established that at the time of the accident Refined's employee was operating the elevator, that this occurred shortly after the refusal of Refined's plant manager to shut it down temporarily upon the request of Angelilli; and that this refusal to shut down the elevator was caused by the plant manager's desire to perform repairs on an upper floor of the premises and to use the elevator for the purpose of transporting Refined's employees and materials to this floor. Whether the verdict upon the third trial was returned upon the theory of the plant manager's negligence in refusing to shut down the elevator or upon the theory of the elevator operator's negligence in running the elevator without warning to the contractor's employee who was injured, cannot be established. The charge of the Trial Court would have permitted a verdict on either theory and the verdict was general. However, even if it be assumed, as the plaintiff claims, that the sole basis for the verdict in the third trial before the State Court was the negligence of the plant manager in refusing to shut down the elevator upon the request of the independent contractor, Angelilli, the result here would be the same.

In addition to the policy of Travelers, there was another outstanding liability policy at the time of the accident. It had been issued by American Mutual Liability Insurance Company (American) in favor of Refined and provided for very broad personal injury coverage at the premises where the accident occurred. It covered, specifically, personal injuries arising out of the operation and maintenance of the elevators at Refined's premises. The elevators were identified on a schedule attached to the policy and the elevator involved in the accident was concededly included in that schedule. This elevator was also covered under the Elevator Collision Endorsement in this policy.

Endorsement 19 of the American policy excluded operations performed under cost plus contract "whenever the assured's (Refined's) interest has been specifically included in such contractor's insurance and where, but for this exclusion, this policy would duplicate or otherwise contribute to such other valid and collectible insurance." The only other insurance was that afforded by the Travelers' policy. Whether this was "other valid and collectible insurance" under the exclusion provision just quoted not only poses the essential question in this case—whether Refined was covered by the Travelers' policy under the circumstances of the Dioguardi accident—but serves to provide the spark for the controversy here which, in effect, is one between the two insurance companies. The issue before me, therefore, turns on the scope of the insurance coverage provided by Travelers' policy.

Before examining Travelers' policy, however, a preliminary observation with respect to American's relationship to this suit seems appropriate. In point of fact, American defended the suit and incurred litigation expenses amounting to $10,576.42, the reasonableness of which has not been questioned before this Court. The amount of the judgment was paid by Refined but the money to pay it was loaned by American, as insurer, to Refined, as insured, under an agreement whereby the loan was to be repaid only out of any recovery in this

litigation. Travelers' objection that Refined is not entitled to sue because it has sustained no damage is not well taken. Where, as here, the insurer makes a loan to the insured, instead of paying a loss, upon an undertaking by the insured to repay only out of any recovery against a third person, the insured, and not the insurer, is the real party in interest and entitled to sue. Luckenbach v. W. J. McCahan Sugar Refining Co., 1918, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170; The Plow City, 3 Cir., 1941, 122 F.2d 816, certiorari denied Plow City S. S. Co. v. Texas Gulf Sulphur Co., Inc., 315 U.S. 798, 62 S.Ct. 579, 86 L.Ed. 1199; see also Sosnow, Kranz and Simcoe, Inc. v. Storatti Corp., 1st Dept. 1945, 269 App. Div. 122, 54 N.Y.S.2d 780, affirmed 1946, 295 N.Y. 675, 65 N.E.2d 326.

As I have already indicated, both American and Travelers had outstanding liability policies at the time of the accident, the former in favor of Refined, the latter in favor of Angelilli, with Refined as an "additional insured". Refined claims that since it was an additional insured under the Travelers' policy issued to Angelilli, Travelers had the duty to defend and indemnify Refined in the suit brought by Dioguardi; and that its breach of that duty makes it liable to Refined for the amount of the judgment in favor of Dioguardi and the expenses of the litigation.

Travelers' duties arise from and are circumscribed by the insurance contract, and I therefore turn to the contract to determine whether Refined's claim is justified. That contract provided:

"The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges * * *;"

and

"The letter 'X' in any premium space shall mean that insurance is not afforded with respect to the hazard stated in the division opposite thereto."

The policy form was so arranged that under the category of "Bodily Injury Liability" the following "Hazards" could be insured against: (1) "Premises-Operations," (2) "Elevators," (3) "Independent Contractors," (4) "Products," and (5) "Contractual." Premium charges were indicated for the hazards of "Premises-Operations" and "Independent Contractors," and the premium spaces provided for the other hazards contained "x"s. Therefore, by the terms of the policy, insurance was afforded with respect to the hazards arising from "Premises-Operations" and "Independent Contractors" and was not afforded with respect to the other hazards enumerated above. Clearly, elevator coverage was excluded.

■ Refined cannot recover under the "Premises-Operations" hazard because Dioguardi's injury was caused by the operation of Refined's elevator and the contract contains a provision excluding from this hazard liability for injuries caused by the operation of elevators.

■ Refined also contends that a certificate issued to it by Travelers extended the coverage of the policy to protect Refined against any liability that might arise by reason of the fact that both Refined and Angelilli were conducting operations on Refined's premises. To adopt Refined's interpretation of the certificate's effect would necessitate reading the elevator exclusion provision out of the policy and extending the insurance contract's coverage to a hazard for which no premium was paid by either Angelilli or Refined. I do not believe that there is any language in the certificate that justifies giving it this effect. The certificate states "that policies, certificates or endorsements of insurance as described below have been issued * * * to the contractor for whom this Certificate is issued and are in force at this time * * *." The policy listed as the policy in force is the policy issued to Angelilli. Then, the certificate names the construction operations "covered under the policies or certificates listed," and again lists the policy issued to Angelilli as the

policy in force. Under these circumstances the certificate gave Refined notice that the policy issued to Angelilli determined the extent of the coverage provided to it as an additional insured. Therefore, there is no merit to the contention of Refined that the certificate broadened this coverage, and the elevator exclusion provision bars Refined from recovering on the basis of the certificate. See Brandyce v. Globe & Rutgers Fire Ins. Co., 1929, 252 N.Y. 69, 168 N.E. 832; New York & O. S. S. Co. v. Automobile Ins. Co., D.C.S.D.N.Y.1929, 32 F. 2d 310, affirmed 2 Cir., 1930, 37 F.2d 461.

But Refined contends that even though it may not recover on the basis of the "Premises-Operations" hazard, or the certificate, it can recover on the basis of the "Independent Contractors" hazard. It is on this ground, moreover, that plaintiff makes its most emphatic argument for recovery. The definition of the "Independent Contractors" hazard is set forth in the policy as follows:

"Operations performed by independent contractors and omissions or supervisory acts of the insured in connection with work performed for the named insured by independent contractors * * *."

An examination of this "Independent Contractors" clause does not, in my opinion, sustain the plaintiff's contention that the refusal to shut down the elevator was an omission or supervisory act of the insured "in connection with work performed for the named insured by independent contractors." The question immediately arises as to the identity of the named insured within the meaning of this clause.

■ The policy gave the name of the insured as the Frank Angelilli Construction Corporation and two individuals. Thereafter throughout the policy the "named insured" was distinguished from the "insured". The coverage was for the benefit of the "insured" but the premiums were to be paid by the "named insured", and only the "named insured" or the company could cancel the policy. Finally, the amendment which added Refined as an insured stated that its interest was "covered as an additional insured as respects to operations performed by the named insured" for Refined. In my opinion, this is a clear indication that the "named insured" were the persons performing operations for Refined, i. e., Angelilli and the two individuals named as insured. Thus, Refined, never referred to as a "named insured", was not a "named insured" within the meaning of the policy. The named insured was Angelilli and to come within the "Independent Contractors" hazard the omission or supervisory act could be considered covered only if it related to work performed for Angelilli by an independent contractor working for Angelilli and not if it related to work performed by Angelilli for Refined.

■ Moreover, I believe that Refined cannot recover under the "Independent Contractors" hazard because that hazard does not apply to injuries arising from elevator operations. The insurance contract was drawn so as to put a prospective purchaser of insurance on notice that if he wanted elevator protection, he had to pay an additional premium. One of the hazards which could have been insured against was "Elevators," and this was defined as "the ownership, maintenance or use, for the purposes stated in the declarations, of any elevator therein designated." Furthermore, the broad language of the "Premises-Operations" hazard was expressly limited by one of the exclusions so that it did not apply to elevators. Upon considering the entire context of the policy, I conclude that since elevator coverage was not contracted for, neither Angelilli nor Refined can claim it. Nor can Refined obtain it by indirection through a strained interpretation of the "Independent Contractors" hazard definition.

■ We come now to the claim that Travelers, in any event, was bound to defend the suit against Refined and should now pay the expenses incurred by Refined in defending that suit. Travelers' position immediately after the acci-

dent in 1947 and continuously thereafter was that the policy did not cover liability for the injury suffered by Dioguardi because elevator coverage had not been provided for. Although it would probably have been the better practice for Travelers to inspect Dioguardi's complaint before disclaiming responsibility under the policy, its failure to do so is not significant in this case. Cf. Lee v. Aetna Cas. & Sur. Co., 2 Cir., 1949, 178 F.2d 750; Grand Union Co. v. General Accident, Fire & Life Assur. Corp., 1st Dept., 254 App.Div. 274, 4 N.Y.S.2d 704, affirmed 1938, 279 N.Y. 638, 18 N.E.2d 38. As the first part of this opinion has shown, the policy did not cover liability for the injury to Dioguardi and at no time did Dioguardi set forth a claim for relief that was within the coverage of the Travelers' policy. Therefore, Refined was not injured by Travelers' refusal to defend and cannot recover for the expenses it incurred in defending.

Since I find that Travelers' disclaimer of responsibility was justified, I need not rule on the affirmative defenses of estoppel and the alleged lack of compliance by Refined with conditions 9 and 10 of Travelers' policy relating to notice of claim or suit, and assistance and cooperation of the insured. However, if my views with respect to the question of insurance coverage were otherwise, I should have no difficulty in holding Travelers liable to indemnify Refined. When Travelers divested itself of responsibility under the policy it did so at its peril, and cannot thereafter cavil at the insured for its failure to comply with conditions of the policy relating to the conduct of litigation. The insured had every right to assume that any compliance with such conditions would have been futile. See John Alt Furniture Co. v. Maryland Casualty Co., 8 Cir., 1937, 88 F.2d 36. Refined did all that was reasonable and necessary to put Travelers on notice. What happened thereafter was the direct consequence of Travelers' assertion of its legal position.

Judgment is granted dismissing the complaint with costs to the defendant.