SERVIDONE CONSTRUCTION CORPORATION, Respondent, v SE-
CURITY INSURANCE COMPANY OF HARTFORD, Appellant,
et al., Defendant.

Third Department, May 31, 1984

APPEARANCES OF COUNSEL

*Rein, Mound & Cotton* (*Robert L. Horkitz* of counsel), for appellant.

*Maney, McConville & Liccardi* (*William J. Roberts* of counsel), for respondent.

### OPINION OF THE COURT

YESAWICH, JR., J.

On March 14, 1972, Servidone Construction Corporation (Servidone), as general contractor, was engaged in the performance of a construction contract in New Jersey with the United States Army Corps of Engineers when John Cuttino, a Servidone employee, fell from a tower on the project, sustaining injuries ultimately resulting in paraplegia. His workers' compensation benefits, which now exceed $500,000, were paid by Security Insurance Company of Hartford (Security), the compensation and liability insurance carrier for Servidone.

Cuttino commenced a negligence action against the United States pursuant to the Federal Tort Claims Act (US Code, tit 28, § 1346, subd [b]; § 2671 *et seq.*) in the United States District Court for the District of New Jersey. The United States impleaded Servidone as a third-party defendant, and Servidone delivered the pleadings to Security, its insurer. Security read the third-party complaint as alleging two causes of action: the first for common-law negligence indemnification and the second for contractual indemnification pursuant to certain provisions of Servidone's Government contract. Security concluded that, although covered under the policy, common-law indemnification was not a viable cause of action and further that, by virtue of a specific exclusion in the policy, it had no duty to defend the claim for contractual indemnification. As for this latter conclusion, it is worth noting that, with respect to Servidone's liability as an employer, the insuring agreement, under "Coverage B — Employers' Liability", binds Security to: "pay on behalf of the insured all sums which the insured shall become legally obligated to pay *as damages because of bodily injury by accident or disease, including death at any time resulting therefrom,*

"(a) sustained* * * by any employee of the insured arising out of and in the course of his employment" (emphasis added). Elsewhere in the policy this clause is directly interpreted to apply to third-party indemnity actions for it is declared that: "The words 'damages because of bodily injury by accident or disease, including death at any time resulting therefrom,' in coverage B include * * * damages for which the insured is liable by reason of suits * * * brought against the insured by others to recover the damages obtained from such others because of such bodily injury sustained by employees of the insured arising out of and in the course of their employment".

Bearing in mind that ambiguities in an insurance policy must be construed against the insurer (*Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356, 361; *Atlantic Cement Co. v Fidelity & Cas. Co.,* 91 AD2d 412, 418-420, apps dsmd 59 NY2d 761) and that it is the insurer's burden, not clearly met here, to prove that the event giving rise to the claim being made patently comes within an exclusion of the policy (*International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 327), the policy at hand undeniably covered the third-party action brought by the United States against Servidone. Nevertheless, following discussions between Servidone and Security, it was agreed that, with full reservations of rights by each, Security would defend Servidone as to both causes of action, characterizing its defense of the contractual cause of action as "gratuitous". Thereafter, Security appeared through counsel in the Federal action on behalf of Servidone and answered the complaint. However, on April 4, 1978, Security notified Servidone that it was totally withdrawing its defense, asserting that the United States had decided at a pretrial conference not to pursue the common-law negligence cause of action because the law of the State of New Jersey prohibited the Government from recovering on that theory.

After unsuccessfully protesting Security's decision to withdraw its defense, Servidone engaged its own counsel who appeared in the Federal action, prepared for trial and commenced this declaratory judgment action on Servidone's behalf. By order entered August 18, 1980, Special Term granted Servidone partial summary judgment decreeing that Security had breached its obligation to furnish

an unqualified defense and that Security would be liable for all damages flowing from that breach (106 Misc 2d 118). Special Term declined to pass on the question of the insurer's obligation to indemnify, declaring that issue to be premature.

On September 25, 1980, after Security's failure to respond to two written notices that the opportunity to settle existed, Cuttino, the United States and Servidone settled the Federal action. The settlement consisted of a $50,000 payment by Servidone to Cuttino.

Servidone then moved to reopen its original motion for summary judgment in order to obtain a determination of Security's obligation to indemnify. By judgment entered September 10, 1981, Special Term declared that the Cuttino settlement in the Federal action was reasonable and that Servidone was entitled to recover the same from Security. This determination is the focal point of this appeal.

■ We affirm. The insurer's obligation to defend extends to any action in which facts are alleged within the coverage afforded by the policy (*International Paper Co. v Continental Cas. Co., supra,* p 326). This includes defending those actions where alternative grounds are advanced, some of which are within and others without the coverage (*Lionel Freedman, Inc. v Glens Falls Ins. Co.,* 27 NY2d 364, 368). Since even groundless suits against the insured must be defended, Security's truncated defense of Servidone unquestionably constituted a breach of its contract. Moreover, its responsibility to defend was undiminished following the pretrial conference in the Federal action, for the record indicates that Servidone remained exposed to damage based on common-law indemnification, a theory for which policy coverage existed.

It is now urged that because the duty to defend and the duty to indemnify are discrete, Security cannot be liable for the $50,000 settlement paid to Cuttino. There is, however, commanding authority for the proposition that where an insurer unjustifiably refuses to defend, the insured may effect a reasonable settlement of the injured party's claim, after which the insured may then secure reimbursement

from the insurer (*Rosen & Sons v Security Mut. Ins. Co.*, 31 NY2d 342; *Cardinal v State of New York,* 304 NY 400). As we perceive application of this principle, if a possibility of a duty to indemnify exists, as in this instance, where Servidone has put forward alternative causes of action, one of which on the face of the complaint is plainly within the policy and the other of which is arguably covered, a refusal by the insurer to defend is unreasonable. In that circumstance, the mere fact that a settlement occurred does not, as Security suggests, invest the insurer with an untrammeled right to challenge whether the insured would have been liable, and under what theory, if a trial had taken place (*Cardinal v State of New York, supra,* p 418). Applying this view does not create insurance coverage where none existed, but simply dictates that where a claim for coverage exists and the insurer breaches its duty to defend, it must indemnify the insured for a reasonably arrived-at settlement because it is impossible to determine on what theory of liability plaintiff might have prevailed.

Here, the damages which Servidone incurred, including the settlement (the reasonableness of which is supported in the record and not seriously challenged on appeal), are a direct consequence of Security's failure to carry out its duty to defend. Though that duty is distinct from the duty to indemnify, Servidone is not thereby prohibited from recovering at least those damages it necessarily suffered by reason of Security's failure to meet its contractual burden of protecting Servidone from attack.

■ Left to be resolved is the appropriateness of the judgment awarded Servidone for the legal expenses it became subject to when it was forced to assume defense of the Federal action. With respect to this issue, Security contends that Servidone was entitled only to recover the expenses of the attorneys of record in the Federal action and urges that the award, made after what was essentially an inquest had been held, be reduced from $20,229.89, as found by the trial court, to $8,340.80. Security's reliance on *Mighty Midgets v Centennial Ins. Co.* (47 NY2d 12) to support its contention is misplaced. When Security withdrew its defense, leaving Servidone to its own devices, Servidone was placed in a position of peril. Lacking the

expertise possessed by Security in defending extremely serious and complicated personal injury claims, Servidone cannot be held to those practice standards which Security would now seek to impose. Additionally, we find no trace of bad faith on Servidone's part. Those expenses allowed by the trial court were reasonable, necessary and actually incurred. The trial court also found that the portion of attorneys' time spent in an effort to convince Security to continue the defense was so modest as to constitute an insignificant part of their over-all services. In doing so, the court acted well within the scope of the evidence on record.

The judgments should be affirmed, with costs.

HARVEY, J. (concurring in part and dissenting in part). We concur with the majority's decision to affirm the judgment entered September 28, 1982 for counsel fees, but we respectfully dissent from that portion of the decision which would affirm the judgment of September 10, 1981 indemnifying plaintiff for the amount of the settlement of the Federal court action.

The issues created by this appeal are governed by the law of contracts. The underlying action is one for a declaratory judgment to determine the rights and obligations of the parties pursuant to the provisions of a contract of insurance as they relate to the events which have taken place. The initial determination, made pursuant to Servidone Construction Corporation's motion for summary judgment in that action, was that Security Insurance Company of Hartford had unjustifiably refused to defend and that Servidone was entitled to recover for any damages resulting from that breach. However, Special Term concluded that the motion for indemnification was premature because it had not yet been determined that Servidone was liable for any damages covered by the policy. On a subsequent motion, Servidone demanded reimbursement for counsel fees and disbursements incurred in the defense of the action. That judgment was appealed and we agree with the majority in their affirmance of that award.

We cannot agree that Servidone's payment of $50,000 to settle the Federal action resulted from Security's breach of its duty to defend. There is no evidence in the present record, and none referred to by either the majority or by

Special Term, to support any contention that the settlement became necessary because of Security's refusal to continue the defense of Servidone. There is no claim that defense counsel acted negligently while they represented Servidone, nor is there any claim that counsel retained by Servidone as substituted attorneys were prejudiced by the manner in which prior proceedings had been conducted. At the time of the settlement, Servidone knew that by prior court order it would be reimbursed for the legal expenses of a trial. Servidone could have demanded a verdict requiring findings of fact on special issues which would have formed the basis for a final determination as to whether Servidone was liable to the United States under any theory of liability within the coverage of the policy. This procedure is recognized by the courts. In fact, it has been stated that a trial is necessary before the ultimate decision as to indemnity can be made (*Lionel Freedman, Inc. v Glens Falls Ins. Co.*, 27 NY2d 364; *511 Main St. Corp. v Fireman's Fund Ins. Cos.*, 91 AD2d 830, app dsmd 59 NY2d 805). Servidone freely chose settlement rather than trial. It would appear that its choice was influenced by a reasonable prediction that, should liability be established on its part, it would not be within the coverage of the policy.

Security has taken a strong position that no liability could have been established in the Federal action within the coverage. It contends that New Jersey law, contrary to New York law, does not permit a third-party action by the defendant against a joint tort-feasor unnamed in the original complaint. Guy Haskins, a New Jersey lawyer, was the attorney for Servidone when the settlement was negotiated. He testified at the inquest conducted to determine the amount of allowable defense costs. His testimony was given after Special Term's decision on indemnification. He stated that his client could not have been held liable under New Jersey law for common-law indemnification in the Federal action. In that respect, it should be noted that the quoted portions of the policy contained in the majority's opinion specifically point out that the insurer's duty to indemnify is restricted to sums which the insured is *legally obligated* to pay. Equally strong is Security's contention that the policy specifically excludes liability for indemnification contractually incurred by the insured.

Relying upon *Rosen & Sons v Security Mut. Ins. Co.* (31 NY2d 342) and *Cardinal v State of New York* (304 NY 400), the majority has concluded that where an insurer unjustifiably refuses to defend, the insured may effect a reasonable settlement of the injured party's claim, after which the insured may then secure reimbursement from the insurer. We believe that their reliance upon those cases for the proposition they state is misplaced. In *Rosen,* it was undisputed that the cause of action alleged was within the coverage. The insurer's only contention was that the insured had violated a condition of the policy prohibiting an insured from settling the claim without the insurer's consent. The Court of Appeals held that if it was found that the insurer did not act in good faith for the insured's interest when the insured was compelled to make a settlement at his peril, violation of the condition was excusable. In *Cardinal,* the Court of Appeals found that the insurer, after first disclaiming any duty to defend or indemnify, later retracted its disclaimer and then asserted a nonexistent limit as to the amount of its liability to indemnify. The court determined that the liability was within the coverage of the policy. It should be noted that in each reported case in which indemnification has been allowed for negotiated settlements, a decision was made first, on the facts or the law or both, that the claim was within the coverage of the policy. In no instance was it determined that coverage was created by the breach (see *Atlantic Cement Co. v Fidelity & Cas. Co.,* 91 AD2d 412, apps dsmd 59 NY2d 761; *Mitchell & Lindstrom,* 12 AD2d 813, mot for lv to app den 9 NY2d 613; *Sucrest Corp. v Fisher Governor Co.,* 83 Misc 2d 394, affd 56 AD2d 564; *Joy Bldrs. v Travelers Ins. Co.,* 19 Misc 2d 786; *Butterweich v Goodman & Garson,* 12 Misc 2d 706; *General Mut. Ins. Co. v Wright,* 7 Misc 2d 331).

We believe that the law was correctly stated in *Rochester Woodcraft Shop v General Acc. Fire & Life Assur. Corp.* (35 AD2d 186). In that case, the Fourth Department recognized that in cases of this nature, two separate and distinct issues are created which require the application of different legal principles. The duty to defend is much broader than the duty to indemnify. An insurer must defend no matter how unreasonable or frivolous the allegations

might be. On the other hand, the contract of insurance does not create a duty to indemnify unless it is established that the insured's liability is within the coverage (*Lionel Freedman, Inc. v Glens Falls Ins Co.,* 27 NY2d 364, *supra; 511 Main St. Corp. v Fireman's Fund Ins. Cos.,* 91 AD2d 830, *supra*).

The decision being reviewed was for summary judgment in the declaratory judgment action. We conclude that the record does not support the granting of such drastic relief. Issues of fact and law have been created by the pleadings and supporting papers. The judgment of September 10, 1981 should be reversed and remitted to Supreme Court, Rensselaer County, for a plenary trial to determine from the facts and the law whether any duty to indemnify exists.

KANE, J. P., and MIKOLL, J., concur with YESAWICH, JR., J.; MAIN and HARVEY, JJ., concur in part and dissent in part in an opinion by HARVEY, J.

Judgments affirmed, with costs.